[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

**FILED**
**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
**December 26, 2006**
**THOMAS K. KAHN**
**CLERK**

No. 05-14720

_____

D.C. Docket No. 05-20708-CV-PCH

MARIA N. GARCIA,

Plaintiff-Appellant,

versus

FEDERAL INSURANCE COMPANY,

Defendant-Appellee.

_____

Appeal from the United States District Court for the
Southern District of Florida

_____

**(December 26, 2006)**

Before DUBINA, KRAVITCH and JOHN R. GIBSON,[*] Circuit Judges.

PER CURIAM:

_____

*Honorable John R. Gibson, United States Circuit Judge for the Eighth Circuit, sitting by designation.

Maria N. Garcia appeals from an order of the district court dismissing her action against the Federal Insurance Company claiming that its homeowner's policy insuring Laura Anderson extended coverage to Garcia, Anderson's employee. As the case presents issues that have not been directly addressed by the Supreme Court of Florida, we believe the issues are appropriate for resolution by Florida's highest court and defer our decision in this case pending the certification of questions to the Supreme Court of Florida.

## I.  BACKGROUND

Maria Garcia worked as a caregiver for Laura Anderson, assisting her with various tasks because of Anderson's poor health. Garcia served as a housekeeper and also ran errands, for which she used a 1994 Volvo owned by Harry Mark Vieth, Anderson's son-in-law. On April 18, 2003, while using the Volvo with the permission of Vieth and Anderson, Garcia pulled up in front of a Publix supermarket where a pedestrian, Gail Archer, was withdrawing money from an ATM. When Garcia attempted to stop the Volvo, her foot slipped off the brake pedal and the car struck Archer, causing serious injuries.

On February 24, 2004, Archer filed suit in the Circuit Court for Miami-Dade County against Vieth, Anderson, and Garcia, among others. The complaint alleged that, as Garcia's employer, Anderson was vicariously liable for Garcia's acts and omissions and also alleged that Anderson, Vieth, and Garcia had

2

negligently failed to maintain the car, allowing the rubber pad on the brake pedal to become so worn that bare metal showed through, which caused Garcia's foot to slip off the brake. Anderson was the named insured under a homeowner's policy issued by Federal Insurance Company, and Federal settled the claims against Anderson. Garcia settled Archer's claim for $7,000,000 and sought coverage from Federal, under Anderson's insurance policy, which denied her claim. Garcia then filed this suit against Federal in the United States District Court for the Southern District of Florida.

## II. DISCUSSION

Garcia argues that, under the terms of Anderson's insurance policy ("Policy"), she qualifies as a "covered person" and is therefore entitled to coverage. The Policy provides as follows:

> *Personal Liability Coverage*
>
> We cover damages a covered person is legally obligated to pay for personal injury or property damage which take place anytime during the policy period and are caused by an occurrence, unless stated otherwise or an exclusion applies ...
>
> <u>A covered person means</u>:
> - you or a family member;
> - <u>any other person or organization with respect to liability because of acts or omissions of you or a family member</u>; or
> - any combination of the above.

***

*DEFINITIONS*

* * *

**You** <u>means the person named in the Coverage Summary</u>,[1] and a spouse who lives with that person.

***

**Family member** <u>means your relative who lives with you</u>, or any other person under 25 in your care or your relative's care who lives with you.

The dispute between Garcia and Federal hinges on whether the additional insured clause covers only the additional insured's vicarious liability for the acts of the named insured. Federal contends that the words "because of" are plain and expressly limit liability to cases where individuals are legally responsible for the acts and omissions of the named insured. Garcia argues that the language in the policy regarding other covered persons is broad and does not limit liability to cases where the covered person is vicariously liable for the acts or omissions of the named insured. There is, of course, no claim that Garcia was vicariously liable for Anderson, since Anderson was the employer. She does claim, however, that she became liable because of Anderson's failure to maintain the car.

---

[1]"You" refers to Anderson since she is the only named insured on the policy.

4

The district court held that Garcia was not entitled to coverage under the policy as an additional insured. According to the district court, "A plain reading of 'with respect to liability because of the acts or omissions of you' means, in this case, Garcia is covered under the Policy if Garcia could be liable for striking the pedestrian because of Anderson's failure" to maintain the car. The district court also relied upon the Florida Supreme Court's decision in Container Corp. of America v. Maryland Casualty Co., 707 So. 2d 733 (Fla. 1998), where the court construed an additional insured clause. In that case, Southern Contractors ("Southern") entered into an agreement with Container Corporation ("Container") to install a vacuum pump at a plant operated by Container. The contract stated that Southern would indemnify Container for liabilities incurred or arising as a result of the performance by Southern of its contractual requirements. Id. at 735. Southern also purchased from Maryland Casualty Company ("Maryland") a comprehensive liability insurance policy in which Southern was the named insured, but which listed Container as an additional insured. A Southern employee was injured and sued Container, alleging that Container's negligence caused the accident. Maryland initiated a declaratory judgment action, arguing that the additional insured clause only covered Container for vicarious liability for Southern's actions, not Container's own negligence. Id. The Florida Supreme Court concluded that, because the additional insured clause lacked limiting

5

language, Container was covered for its own negligence as well as for acts of Southern. Id. at 736.

The Florida Supreme Court in Container pointed to Consolidation Coal Co. v. Liberty Mutual Insurance Co., 406 F. Supp. 1292 (W.D. Pa. 1976), as a case in which an additional insured clause stated a clear intent to cover an additional insured for the named insured's negligence, but not for the additional insured's negligence. In Consolidation Coal, the additional insured clause was limited as follows: "but only with respect to acts or omissions of the named insured in connection with the named insured's operations." Id. at 1294. The policy was issued by Liberty Mutual Insurance Company to Long's Hauling Company. Long, by contract, had agreed to haul various coal products for Consolidation Coal Company. In the policy issued by Liberty, Consolidation had been added as an additional insured, but limited by the "acts or omissions" clause. Following an accident involving an employee of Long, Raymond Mazjer, and several Consolidation employees, Mazjer filed suit claiming that Consolidation's negligence was the sole and proximate cause of the incident. In the suit between Consolidation Coal and Liberty Mutual Insurance Company, the district court first determined that the policy's "acts or omissions" clause was ambiguous. Id. at 1295. It then concluded that the clause limited coverage to those instances where

"the negligent acts or omissions of Long directly caused Consolidation's loss." Id. at 1299.

The district court in the instant case relied upon the Florida Supreme Court's citation of Consolidation Coal. The district court concluded the following:

> The provision in Federal's Policy providing an additional insured coverage 'with respect to liability because of the acts or omissions of' the named insured, is stronger, clearer language of limitation than was at issue in Consolidation Coal, which held a similar provision limited coverage to vicarious liability. Consolidation Coal is thus persuasive authority for concluding that Garcia would be covered only if she is liable because of the acts or omissions of Anderson.

Accordingly, the district court held that the policy only covered Garcia for Anderson's acts for which Garcia was vicariously liable, not for Anderson's acts that indirectly caused Garcia to become liable. The district court dismissed Garcia's suit.

After the district court's decision in the instant case, the Supreme Court of Florida interpreted an insurance contract's use of the words "arising out of" in Taurus Holdings, Inc. v. United States Fidelity & Guaranty Co., 913 So. 2d 528 (Fla. 2005). In that case, Taurus Holdings, Inc. and Taurus International Manufacturing, Inc. ("Taurus") sought coverage under several commercial general liability policies issued by various insurers for lawsuits by municipalities against Taurus for damages arising from Taurus's manufacturing, distributing, and selling

7

firearms. The policies required the insurers to defend Taurus in "lawsuits seeking damages for bodily injury, property damage, advertising injury or personal injury." Id. at 531. The municipalities, among other causes of action, alleged "negligence, negligent supervision, negligent marketing, negligent distribution, negligent advertising, negligent entrustment, public and private nuisance, failure to warn, false advertising, and unfair and deceptive trade practices." Id. at 530.

The insurers sought to avoid the obligation to defend, relying on exclusions for products-completed operations hazards that covered bodily injury and property damage occurring away from Taurus's premises and "arising out of" Taurus's "products." Id. The question before the Supreme Court of Florida was whether the policy excluded liability only for defective products or whether it excluded liability for all product related injuries. The Supreme Court of Florida interpreted the term "arising out of" broadly and held that the insurers had no duty to defend Taurus against the lawsuits.

In its analysis, the Supreme Court of Florida reiterated several principles of insurance contract interpretation. It stated that "Under Florida law, insurance contracts are construed according to their plain meaning." Id. at 532. If there is more than one reasonable interpretation of an insurance policy, however, such "ambiguities are construed against the insurer and in favor of coverage." Id. The Supreme Court of Florida concluded that "the phrase 'arising out of your product'

8

in the products-completed operations hazard exclusions at issue is unambiguous." Id. at 539. The term has a broader meaning than the term "caused by" and "requires more than a mere coincidence between the conduct (or, in this case, the product) and the injury ... [b]ut it does not require proximate cause." Id. at 539-40.

Garcia contends that the Florida Supreme Court's interpretation of the term "arising out of" bolsters her argument that "because of" can support liability in instances other than vicarious liability. According to Garcia, the term "because of," similar to the term "arising out of," is a broad phrase that can indicate both "has a connection with" as well as proximate causation. Garcia contends that in the absence of a direct interpretation of the term "because of" by the Florida Supreme Court, the holding in Taurus is the best guide for interpreting the Policy.

Federal disagrees. Federal argues that the Florida Supreme Court's holding in Taurus is of no avail to Garcia because the decisions in Container and Consolidation Coal offer a clear explanation of what constitutes limiting language in an additional insured clause, and any attempt by Garcia to rely upon Taurus is therefore misplaced. Federal contends that the key policy language in both the instant case and Consolidation Coal limits coverage to liability caused by the acts or omissions of the named insured and Taurus does not address this point. Federal argues the following:

In Consolidation Coal, the policy stated that "Consolidation was added as 'an additional insured but only with respect to the acts or omissions of the named insured in connection with the named insured's operations' on Consolidations's premises." 406 F. Supp. at 1294. It is this clear policy language, "acts or omissions," which the Florida Supreme Court pinpointed as unambiguously limiting an additional insured's coverage to its vicarious liability for the named insured. 707 So.2d at 736.

While Federal is correct that many of the cases discussed by both parties make reference to the "acts or omissions" of the named insured, none of the policies are identical in language to Anderson's. In the instant case, Federal defined a covered person as "any other person with respect to liability because of acts or omissions of you or a family member." In Consolidation Coal, the limiting clause stated that the additional insured was covered, "but only with respect to acts or omissions of the named insured in connection with the named insured's operations." Id. at 1296.

While Consolidation Coal stated that "[t]he effect of the words 'acts or omissions' ... was to qualify the extent of the coverage provided," Id. at 1298-99, it also recognized that "the use of the words 'but only' with respect, etc., in the endorsement ... appears to be an attempt by defendant to qualify the extent to which plaintiff is an additional insured under the policy." Id. It was the entire clause, then, that allowed the court to determine that Consolidation was covered

10

only if "the negligent acts or omissions of Long directly caused Consolidation's loss." Id. at 1299. It is therefore arguable that the language in Consolidation Coal, which the Florida Supreme Court considers to be clear, can be distinguished from the language in the instant case. The court in Consolidation Coal determined on the entirety of the clause's language that the policy was limited to vicarious liability. Given the differences between the two clauses, and the limited discussion of Consolidation Coal in the Florida Supreme Court's decision in Container, there appears to be some ambiguity regarding the proper interpretation of Federal's Policy. For this reason, along with the Florida Supreme Court's decision in Taurus, we are unsure as to what interpretation Florida courts would consider appropriate in the instant case.

When significant doubt exists about the answer to a material state law question upon which the case turns, a federal court should certify that question to the state supreme court in order to avoid engaging in unnecessary speculation. See, e.g., Mosher v. Speedstar Div. of AMCA Int'l, Inc., 52 F.3d 913, 916-917 (11th Cir. 1995).

### III. QUESTIONS TO BE CERTIFIED

Accordingly, we respectfully certify the following questions of law to the Florida Supreme Court:

11

1.  Is an insurance policy that defines a covered person as "any other person with respect to liability because of acts or omissions" of the insured ambiguous?

2.  Does an insurance policy providing coverage for an additional insured "with respect to liability because of acts or omissions" of the named insured limit coverage to instances in which the additional insured is vicariously liable for acts of the named insured?

Our statement of the questions is not meant to restrict, in any way, the Florida Supreme Court's response to the questions or its analysis of the issues raised. We seek clarification (and possibly correction) in light of our own analysis of Florida state law, and the questions posed are just a guide. To assist the Florida Supreme Court, if it decides to accept this certification, with its consideration of the case, the record and briefs will accompany this certification.

QUESTIONS CERTIFIED