[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No.08-10954
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 23, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 06-60325-CV-WPD

THOSE CERTAIN UNDERWRITERS AT LLOYD'S LONDON,

Plaintiff-Appellee,

LONDON MARKET INSURANCE COMPANIES,

Plaintiff,

versus

GMC LAND SERVICES, INC., et al.,
a Florida corporation doing business as Richmond Abstract,

Defendants,

OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY,
a Minnesota corporation,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(February 23, 2009)

Before EDMONDSON, Chief Judge, TJOFLAT and BLACK, Circuit Judges.

PER CURIAM:

Defendant-Appellant Old Republic National Title Insurance Company ("Old Republic") appeals the grant of summary judgment in favor of Plaintiffs-Appellees, Those Certain Underwriters at Lloyd's, London ("Lloyd's"), in a declaratory judgment suit seeking to determine insurance coverage under a professional liability policy issued by Lloyd's. No reversible error has been shown; we affirm.

The facts largely are undisputed. Old Republic is a title insurance underwriter. GMC Land Services of Florida, Inc. ("GMC") operated as a policy issuing agent for Old Republic; GMC received and processed applications for title insurance and issued title insurance policies for Old Republic. Lloyd's issued a professional services liability policy to GMC.

On 28 December 2004, GMC closed a real estate sale on a parcel of property in Pembroke Pines, Florida (the "Property"); by warranty deed filed in the Broward County Recorder's Office, the Property was transferred from Jacquelin Jones Thom to Shekinal Awofadeju. Awofadeju had obtained a mortgage loan of $456,000 from Aegis Funding Corporation ("Aegis"); GMC issued a title

insurance policy through Old Republic insuring title to the Property on behalf of Aegis in the amount of the mortgage.

As of 28 December 2004, the Recorder's Office reflected that a quitclaim deed for the Property had been issued on 19 July 2004 and recorded on 28 September 2004; the quitclaim deed purported to transfer the Property from Steven E. Tovar to Jacquelyn Jones Thom. Tovar later filed an action to clear title. According to Tovar, his signature on the 19 July 2004 quitclaim deed was forged, and Thom obtained no title from the purported transfer. Aegis made a claim against Old Republic on the title insurance policy; and Old Republic paid Aegis $456,000, the full amount of the title insurance policy. Old Republic then sought to recover this payment from GMC claiming that GMC had failed to follow applicable agent guidelines and procedures: specifically, GMC had failed to alert Old Republic to the existence of the quitclaim deed in the chain of title to the Property. GMC, in turn, reported the claim to Lloyd's, its professional services liability insurer. Lloyd's disclaimed coverage under the Policy; and Lloyd's initiated this declaratory judgment action to determine what obligation, if any, it had under the professional liability policy to indemnify GMC against claims made by Old Republic for GMC's alleged negligence.

Both parties moved for summary judgment below; each advanced the same

provision of the professional liability policy in support of the motion. That

provision -- entitled "Land Flip Exclusion" -- reads:

> This Policy does not apply to Loss in connection with any
> Claim:
>
> Based upon or directly or indirectly arising out of or
> resulting from: (a) any transaction involving real
> property that occurs within six months after a sale,
> assignment, transfer or change in ownership involving
> such real property, or (b) any failure to comply with
> closing instructions relating to a prior sale, assignment,
> transfer or change in ownership involving the property
> that is the subject of closing.

Applying Florida law,[1] the district court determined that the plain language

of the policy excluded coverage: the 28 December 2004 purported sale of the

Property occurred within six months of the 19 July 2004 purported transfer from

Tovar. We agree.

Old Republic argues on appeal -- as it did before the district court -- that the

exclusion has no application because it is triggered only when a valid or legitimate

or actual "sale, assignment, transfer or change in ownership" occurs within the

preceding six-month period. According to Old Republic, the claimed forgery of

the Tovar quitclaim deed was void ab initio; it was a legal nullity and, as a matter

---

[1]This matter is in federal court under diversity jurisdiction; the parties agreed that Florida
law applies.

4

of law, was no transaction for purposes of the Land Flip Exclusion.

Whatever may be the status of the Tovar quitclaim deed under principles of Florida real estate law -- and we assume arguendo that the quitclaim deed was void ab initio -- the question at the heart of this appeal is one of insurance coverage and principles of Florida law applicable to the construction of an insurance policy. As the district court noted correctly, insurance policies must be read as a whole, Fla. Stat. § 627.419(1). "[I]nsurance contracts are construed according to their plain meaning," Taurus Holdings Inc. v. U.S. Fidelity and Guaranty Co., 913 So.2d 528, 532 (Fla. 2005); and every term should be given "its full meaning and operative effect." Auto-Owners Insurance Co. v. Anderson, 756 So.2d 29, 34 (Fla. 2000). "If the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and another limiting coverage, the insurance policy is considered ambiguous," id.; and ambiguities are construed in favor of the insured and strictly against the insurer. Swire Pacific Holdings, Inc. v. Zurich Insurance Co., 845 So.2d 161, 165 (Fla. 2003). But the Florida Supreme Court has cautioned that this rule of construction only applies when a provision is actually ambiguous; "'if a policy provision is clear and unambiguous, it should be enforced according to its terms whether it is a basic policy provision or an exclusionary provision.'" Garcia v. Federal Insurance Co.,

5

969 So.2d 288, 291 (Fla. 2007), quoting Taurus Holdings, 913 So.2d at 532.

The insurance provision at issue is time-focused: only property transactions within a six-month-time-frame are addressed by the Land Flip Exclusion. Taken in context, we agree with the district court that the plain language of the exclusion is unambiguous; the policy excludes coverage of any claim directly or indirectly arising out of any transaction (here, the sale by Thom of the Property to Awofadeju) within six months after another "sale, assignment, transfer or change in ownership" (here, the transfer of the Property from Tovar to Awofadeju by quitclaim deed as recorded in the County Recorder's Office). Under ordinary rules of construction -- construing the plain language of the Policy as bargained for by the parties, see Auto-Owners, 756 So.2d at 33 -- the Policy is susceptible to only one reasonable interpretation. We reject Plaintiff's efforts to engraft further limitations on the plain language of the Policy; the Policy excludes coverage of claims arising from a sale, assignment, transfer, or change in ownership within the six-month-time frame whether the sale, assignment, transfer, or change in ownership is determined later to have been illegitimate, fraudulent, forged or otherwise of no legal consequence. See Excelsior Insurance Co. v. Pomona Park Bar & Package Store, 369 So.2d 938, 942 (Fla. 1979) (courts are not to "rewrite contracts, add meaning that is not present, or otherwise reach results contrary to

6

the intentions of the parties").

AFFIRMED.[2]

---

[2]Because we conclude the district court granted summary judgment correctly under clause (a) of the Land Flip Exclusion, we do not consider Lloyd's argument that clause (b) also would support summary judgment in its favor.