[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 09-12533
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
Oct. 23, 2009
THOMAS K. KAHN
CLERK

D.C. Docket No. 07-01743-CV-ORL-22DAB

PHILADELPHIA AMERICAN LIFE INSURANCE COMPANY,

Plaintiff-Counter Defendant-
Appellee,

versus

CHARLES BUCKLES,

Plaintiff-Counter-Claimant-
Third-Party Plaintiff-Appellant,

versus

CENTRAL STATES HEALTH & LIFE COMPANY OF OMAHA,

Third- Party Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(October 23, 2009)

Before BIRCH, HULL and COX, Circuit Judges.

PER CURIAM:

This case involves the interpretation of a provision in a supplemental cancer and specified disease insurance policy. Charles Buckles ("Buckles") contends that the district court erred in finding that the term "actual charges incurred" is unambiguous and "means the actual amount accepted by a health care provider as full satisfaction of the insured's obligations for treatment covered by the Policy." (R.6-128 at 37.) Instead, Buckles argues that "actual charges incurred" is synonymous with "actual charges," the amount that the health care provider bills for services, which is generally higher than the amount that the health care provider will accept as full satisfaction of the liability.

We take the following undisputed facts from the district court's order. Buckles purchased a Cancer and Specified Disease Policy ("Policy") from Appellee Central States Health & Life Co. of Omaha ("CSO"), which provides supplemental coverage paying benefits directly to Buckles for certain treatments. The Policy pays benefits despite the fact that Buckles' primary health insurance provides for payment of his medical expenses. He may retain all benefits that he receives from the supplemental policy that exceed his medical expenses.

2

In 1999, Buckles was diagnosed with an incurable disease covered under the Policy, myasthenia gravis. This disease required Buckles to receive intravenous immunoglobulin ("IVIG") treatments every three to four weeks. These treatments are covered under the Immunotherapy provision of the Policy, which provides: "[w]e will pay the *actual charges incurred* for the following treatment techniques provided they are used for the purpose of modification or destruction of cancerous tissue." (R.4-88, Ex. 42 at 7.) (emphasis added).

Throughout his treatment, Buckles' primary insurance policy discharged his liability for his treatments in full. The primary insurer paid a reduced, negotiated amount to the hospital which is less than the amount the hospital actually billed. The hospital accepted the reduced amount as full payment for the treatments. Consequently, neither Buckles nor his primary insurer are liable for the difference between the reduced amount paid by the primary insurer and the amount actually billed by the hospital.

In 2005, Philadelphia American Life Insurance Company ("Philadelphia") obtained some of CSO's policies, which included Buckles' policy. Philadelphia, CSO's transferee, brought the underlying declaratory judgment action which sought construction of the contract term "actual charges incurred." Buckles filed a counterclaim against Philadelphia for declaratory judgment and a third-party

complaint against CSO for a declaratory judgment, fraud, and breach of contract. On the relevant issue in this appeal, the district court granted Philadelphia's and CSO's motion for summary judgment on the contract interpretation question. The district court held that "actual charges" is the amount billed by the provider, and that "actual charges incurred" is the reduced amount that the hospital accepts from an insurance company as full payment.

Buckles contends that the district court erred by construing the Policy against him. He asserts there are two reasonable interpretations of "actual charges incurred," and that there is overwhelming extrinsic evidence, including the course of performance between the parties, that "actual charges incurred" is the total amount billed by the hospital. In contrast, Philadelphia argues that the district court correctly held that "actual charges incurred" is unambiguous and means the "actual amount accepted by a health care provider as full satisfaction of the insured's obligations for treatment." (R.6-128 at 37.) The threshold issue before this court is whether the Policy provision, "actual charges incurred," is ambiguous. For the following reasons, we hold that it is not.[1]

---

[1]This case is a diversity action. We are asked to interpret an insurance policy. Thus, Florida substantive law applies. (R.1-128 at 17.)

If a provision in an insurance policy contract "is susceptible to more than one reasonable interpretation, one providing coverage and another limiting coverage, the insurance policy is considered ambiguous." *Garcia v. Federal Ins. Co.*, 969 So.2d 288, 291 (Fla. 2007) (*quoting Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000)). The determination of whether the relevant policy term is ambiguous is a question of law. *Team Land Dev., Inc. v. Anzac Contractors, Inc.*, 811 So. 2d 698, 699-700 (Fla. 3d DCA 2002); *see also Jones v. Utica Mut. Ins. Co.*, 463 So. 2d 1153, 1157 (Fla. 1985) (noting that "[i]t is well settled that the construction of an insurance policy is a question of law for the court.")

"Under Florida law, insurance contracts are construed according to their plain meaning." *Taurus Holdings, Inc. v. U.S. Fidelity & Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005). The mere fact that two parties may "ascribe different meanings to the language does not mean the language is ambiguous so as to allow the admission of extrinsic evidence." *Kipp. v. Kipp.*, 844 So. 2d 691, 693 (Fla. 4th DCA 2003). In other words, "a true ambiguity does not exist merely because a document can possibly be interpreted in more than one manner." *Lambert v. Berkley South Condo. Ass'n*, 680 So. 2d 588, 590 (Fla. 4th DCA 1996). However, when an ambiguity in a policy provision does exist, it is interpreted against the insurance company who prepared the policy and in favor of the policy holder. *See e.g., Garcia*, 969 So. 2d at 291. On the

5

other hand, when a provision is unambiguous, "the court's task is to apply the plain meaning of the words and phrases used to the facts before it." *Flaxman v. Gov't Employees Ins. Co.*, 993 So. 2d 597, 599 (Fla. 4th DCA 2008) (*quoting Classic Concepts, Inc. v. Poland*, 570 So. 2d 311, 312 (Fla. 4th DCA 1990). "Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy." West's FSA § 627-419(1).

This court's task then is to apply these principles to the relevant Policy provision in this case: "actual charges incurred." We conclude that the plain meaning of "actual charges incurred" is the "amount the provider accepts from an insurer as full satisfaction of the policyholder's liability." (R.6-128 at 26.) In *Reliance Mut. Life Ins. Co. of Ill. v. Booher*, 166 So. 2d 222 (Fla. 2nd DCA 1964), after consulting Webster's Dictionary, the district court found "incurred" to mean that "the insured must have actually paid or must have become liable for." *Reliance*, 166 So. 2d at 224; *see also Ceballo v. Citizens Prop. Ins. Corp.*, 967 So. 2d 811, 815 (Fla. 2007) (finding that "to incur" an expense "means to become liable for the expense.") Dictionaries also provide support for our conclusion. Black's Law Dictionary defines "incur" as "[t]o suffer or bring on oneself (a liability or expense)"). *Black's Law Dictionary* 782 (8th ed. 2004).

6

Buckles contends that the district court's order is inconsistent, because it "considered industry practice to interpret 'actual charges' . . . but then refused to do so when construing 'actual charges incurred.'" (Appellant Br. at 15.) The district court concluded that the phrase "actual charges," standing alone, is unambiguous and refers to the total amount billed by the hospital. That may or may not be correct. We find it unnecessary to consider the meaning of "actual charges" standing alone; we need only consider whether the phrase "actual charges incurred" is unambiguous. The district court, upon finding that the "actual charges incurred" provision was unambiguous, was prohibited from looking outside the four corners of the contract–"a Florida court may not consider extrinsic evidence to interpret a contract which is clear and unambiguous." *Shipner v. Eastern Air Lines, Inc.*, 868 F.2d 401, 405 (11th Cir. 1989) (quotations and citations omitted). In contrast, however, courts may certainly consult dictionaries in order to determine the plain meaning of words in a contract to determine if an ambiguity exists. *See Garcia,* 969 So. 2d at 291-92 (noting that "[w]hen interpreting insurance contracts, [courts] may consult references commonly relied upon to supply the accepted meanings of words."); *see also Beans v. Chohonis*, 740 So. 2d 65, 67 (Fla. 3rd DCA 1999) (noting that "[o]ne looks to the dictionary for the plain and ordinary meaning of words.") This is precisely the analysis that the district court undertook. Although not determinative for our finding, we also note

7

that our decision is in accord with the principle noted by Philadelphia, that a court should strive to construct a contract in a reasonable manner. The Supreme Court of Florida has written,

> [t]he words of a contract will be given a reasonable construction, where that is possible, rather than an unreasonable one, and the court will likewise endeavor to give a construction most equitable to the parties, and one which will not give one of them an unfair or unreasonable advantage over the other. So that interpretation which evolves the more reasonable and probable contract should be adopted, and a construction leading to an absurd result should be avoided."

*James v. Gulf Life Ins. Co.*, 66 So. 2d 62, 63 (Fla. 1953) (*quoting* 17 C.J.S. Contracts, § 319). Construing the contract in the manner advanced by Buckles would give him a benefit based on a fictional amount and lead to an absurd result. Although the hospital has accepted approximately $1,600,000 as full satisfaction for its services, Buckles has been paid approximately $4,900,000 from the Policy. Neither Buckles nor his primary insurer are liable for the amount above the $1,600,000 figure. The language of the contract does not compel a reading which would require payment of the higher amount, and it is unreasonable to believe that the drafter of the insurance contract would have intended such a result.

We find that the contractual provision at issue is clear and unambiguous. As a result, we are precluded from considering extrinsic evidence and the course of

performance offered by Buckles. *Shipner*, 868 F.2d at 405; *see also Rafael J. Roca, P.A. v. Lytal & Reiter, Clark, Roca, Fountain & Williams,* 856 So. 2d 1, 5 (Fla. 4th DCA 2003).

For these reasons, the district court correctly held that "actual charges incurred" is the "actual amount accepted by a health care provider as full satisfaction of the insured's obligations for treatment." (R.6-128 at 37.)

AFFIRMED.