**JAMES RIVER INSURANCE COMPANY, Plaintiff,**

v.

**MED WASTE MANAGEMENT, LLC, et al., Defendants.**

**Case No. 1:13–cv–23608–KMM.**

United States District Court, S.D. Florida.

Filed Sept. 22, 2014.

Sina Bahadoran, John Joseph Cavo, Hinshaw & Culbertson, LLP, Coral Gables, FL, for James River Inc. Co.

Kenneth J. Rubinstein, Haynes and Boone, LLP, New York, NY, Kevin Crow Kaplan, Coffey Burlington, Miami, FL, for Med Water Mgmt., LLC and Avrohom Prager.

Leslie Mitchell Kroeger, Cohen Milstein Sellers & Toll, PLLC, Palm Beach Gardens, FL, Ryan Michael Kelly, David M. Oppenheim, Jeffrey A. Berman, Anderson & Wanca, Rolling Meadows, IL, for A Aventura Chiropractic Center, Inc.

### ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

K. MICHAEL MOORE, Chief Judge.

THIS CAUSE comes before the Court upon the Motion for Summary Judgment

(ECF No. 66) ("Plaintiff's Motion") filed by Plaintiff James River Insurance Company ("Plaintiff"), and the Cross–Motion for Summary Judgment (ECF No. 81) ("Defendants' Motion") filed by Defendant A Aventura Chiropractic Center, Inc. ("A Aventura").[1] Defendants Responded (ECF No. 80) to Plaintiff's Motion and Plaintiff Replied (ECF Nos. 87, 88), distinguishing between separate Defendants. Plaintiff Responded (ECF No. 92) to Defendants' Motion and Defendants Replied (ECF No. 97). Plaintiff's Motion and Defendants' Motion are therefore ripe for review. UPON CONSIDERATION of the Cross Motions, the Responses, the Replies, the applicable evidence, and being otherwise fully advised in the premises, the Court enters the following Order GRANTING Plaintiff's Motion and DENYING Defendants' Motion.

## I. BACKGROUND

This is an action filed by Plaintiff seeking, among other relief, a declaratory judgment finding that Plaintiff has no obligation to defend or indemnify Defendants in an underlying lawsuit filed in this district in 2012 (the "Underlying Lawsuit")

(Case No. 1:12–cv–21695–CMA). See Am. Compl. (ECF No. 10) at 15.

Prager is the principal manager of Med Waste, a medical waste transportation and disposal business. Pl.'s Mot., Ex. C ("Prager Decl.") at 5, 8–9.[2] Med Waste contracted with another company, Adverfax, to send a large number of unsolicited faxes advertising Med Waste's services. Joint Pretrial Stipulation ¶ 5(L); Prager Decl. ¶¶ 2–4. A Aventura was a recipient of one of the unsolicited fax advertisements and therefore filed a two-count class action lawsuit against Med Waste—the Underlying Lawsuit. The first count alleged violations of the Telephone Consumer Protection Act (the "TCPA"). The second count alleged common law conversion.[3] See Joint Pretrial Stipulation ¶ D; Pl.'s Mot., Ex. A ("Second Am. Compl. in Underlying Lawsuit") (ECF No. 64–1). The TCPA claims were premised on the unsolicited nature of the fax advertisements, see 47 U.S.C. § 227; Second Am. Compl. in Underlying Lawsuit ¶¶ 22–37, and the conversion claims were premised on the theory that the unsolicited faxes converted the fax machines, paper, and ink toner of those who received the faxes. See id.

---

1. Defendant Med Waste Management, LLC ("Med Waste") joins in Defendants' Motion. Defs.' Mot. at 1, n. 1. The Court notes that Defendants' Motion does not indicate whether Defendant Avrohom Prager ("Prager") joins in Defendants' Motion. The Court Ordered (ECF No. 78) "the Parties [to] clearly state on each filing which Parties join the filing," because: Med Waste and Prager previously failed to file motions for summary judgment by the dispositive motions deadline; previously failed to timely respond to Plaintiff's Motion; previously failed to properly distinguish between Med Waste and Prager as separate Defendants; and a combination of each of the Defendants either inadvertently omitted whether they joined previous filings in this case or otherwise created confusion over the same. See Order, ECF No. 78; Defs.' Resp. to Order to Show Cause (ECF No. 47) at 1. Thus, because Prager is the principal member

and manager of Med Waste, Pl.'s Mot., Ex. C ("Prager Dep.") (ECF No. 64–3) at 5:10–12, and because Med Waste joins in Defendants' Motion and Defendants' Response (ECF No. 80) to Plaintiff's Motion, the Court elects to construe all summary judgment related briefing filed by any Defendant as briefing filed by all Defendants.

2. Unless otherwise stated, citations to exhibits, ECF Nos., and documents in this Order refer to the location of those documents on this Court's electronic docket, not the location of those documents on the Underlying Lawsuit's electronic docket.

3. The counts from the Underlying Lawsuit shall hereinafter be referred to as the "TCPA claims" and the "conversion claims."

¶¶ 14, 16, 38, 43. Med Waste sent at least 20,000 unsolicited fax advertisements, *see* Settlement Agreement (ECF No. 75–2) at 5. Violations of the TCPA can result in statutory damages of $1,500.00 per fax. *See id.* at 2. Thus, the parties in the Underlying Lawsuit entered into a settlement agreement. Subsequently, a settlement class was certified and a judgment of $10,000,000 was entered against Med Waste. *Id.* at 4; *see* Order Granting Final Approval of Class Settlement in Underlying Lawsuit (ECF No. 64–10).

Prior to the Underlying Lawsuit, Plaintiff issued a commercial general liability insurance policy (the "Policy") to Med Waste. *See* Pl.'s Mot., Ex. B (ECF No. 64–2). Among other types of coverage, the Policy provided coverage for "BODILY INJURY AND PROPERTY DAMAGE LIABILITY," *see id.* at 5, and "PERSONAL AND ADVERTISING INJURY LIABILITY." *See id.* at 9. Thus, subject to certain exclusions, the Policy created a general duty on the part of Plaintiff to defend and indemnify Med Waste for lawsuits alleging certain types of claims. The relevant coverages are as follows:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

**SECTION I—COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

2. **Exclusions**

   This insurance does not apply to:. . . .

**COVERAGE B PERSONAL AND ADVERTISING LIABILITY**

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.

2. **Exclusions**

   This insurance does not apply to:

*Id.* at 5–6 ("Coverage A"), 9–10 ("Coverage B").

The relevant exclusions are as follows:

**EXCLUSION—VIOLATION OF STATUTES THAT GOVERN E-MAILS, FAX, PHONE CALLS OR OTHER METHODS OF SENDING MATERIAL OR INFORMATION**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. The following exclusion is added to Paragraph 2., **Exclusions of Section I—Coverage A—Bodily Injury and Property Damage Liability:**

2. **Exclusions**

This insurance does not apply to:

### DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

    a.  The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law. . . .

**B.**  The following exclusion is added to Paragraph **2., Exclusions of Section I—Coverage B—Personal and Advertising Injury Liability:**

**2.  Exclusions**

This insurance does not apply to:

### DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

    a.  The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law. . . .

*Id.* at 44 (the "TCPA Exclusion").

\*     \*     \*     \*     \*     \*

### FIDUCIARY EXCLUSION

This endorsement modifies insurance provided under the following:

ALL COVERAGE PARTS

This policy does not apply to any claim arising out of the:

    1.  Coercion, conversion, misappropriation of others' funds or property. . . .

*Id.* at 49 (the "Conversion Exclusion").

\*     \*     \*     \*     \*     \*

### DUTY TO DEFEND EXCLUSION

Where there is no coverage under this policy, there is no duty to defend.

*Id.* at 25.

\*     \*     \*     \*     \*     \*

Substantial litigation occurred in the Underlying Lawsuit and default was entered against Med Waste before it ever notified Plaintiff of the claims against it. *See* Defs.' Mot., Ex. A (the "Denial Letter") (ECF No. 75–1) at 2. After being notified, Plaintiff issued the Denial Letter stating that the TCPA claims and the conversion claims were excluded from coverage. *Id.* at 1. Later, Plaintiff filed the instant declaratory relief action seeking a declaration that it owes no duty to defend or indemnify Med Waste. Plaintiff's Motion argues Plaintiff owes no duty to defend or indemnify because claims arising from the fax advertisements are excluded from coverage by the TCPA Exclusion and the Conversion Exclusion (the "Exclusions"). Defendants advance a number of arguments as to why the Court should find that Plaintiff owes Med Waste a duty to defend and indemnify for the Underlying Lawsuit.[4]

## II.  *LEGAL STANDARD*

Summary judgment may be entered only where there is no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law. *Twiss v. Kury,* 25 F.3d 1551, 1554 (11th Cir.1994); Fed.R.Civ.P. 56(a). An issue of fact is "material" if it is a legal element of the claim under the substantive law applicable to the case. *Allen v. Tyson Foods, Inc.,* 121 F.3d 642, 646 (11th Cir. 1997). An issue of fact is "genuine" if the

---

4.  Though the $10,000,000 judgment is against Med Waste, A Aventura seeks a declaration that Plaintiff owed a duty to defend and indemnify Med Waste, presumably, because it seeks satisfaction of the $10,000,000 judgment from Plaintiff (as Med Waste's indemnifier) rather than from Med Waste itself.

record taken as a whole could lead a rational trier of fact to find for the nonmoving party. *Id.; see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In applying this standard, a district court must view the evidence and draw all factual inferences therefrom in the light most favorable to the nonmoving party. *Tyson Foods*, 121 F.3d at 646.

The moving party has the burden of "demonstrating that no genuine dispute exists as to any material fact...." *Twiss*, 25 F.3d at 1554. To meet this burden, the moving party must cite to particular evidence in the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations ..., admissions, interrogatory answers, or other materials." *Ritchey v. Southern Nuclear Operating Co.*, 423 Fed.Appx. 955, 956–57 (11th Cir.2011) (quoting Fed. R.Civ.P. 56(c)(1)(A)). If the nonmoving party fails to make an evidentiary showing sufficient to establish the existence of an essential element on which it has the burden of proof at trial, there is no genuine issue of material fact. *Twiss*, 25 F.3d at 1554. "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Declaratory judgment actions seeking a declaration regarding insurance coverage may be decided on summary judgment "when the insurer's duty, if any, rests solely on the applicability of the insurance policy, the construction and effect of which is a matter of law." *Maryland Cas. Co. v. Fla. Atl. Orthopedics, LLC*, 771 F.Supp.2d 1328, 1331–32 (S.D.Fla.2011) *aff'd*, 469 Fed.Appx. 722 (11th Cir.2012).

## III. *LEGAL ANALYSIS*

### A. *Choice of Law*

The first issue is whether New York law applies, because the Policy was executed in New York and Med Waste is a New York company, or whether Florida law applies, as Florida is the forum state.

Plaintiff argues that no choice of law inquiry is necessary because analysis of the Exclusions leads to the same result under both Florida law and New York law, namely a finding of no coverage for the Underlying Lawsuit. Pl.'s Mot. at 3. Defendants argue that Florida law controls interpretation of the Policy because "James River has not met its burden to show that New York's rules of insurance coverage interpretation differ in any material respect from those of Florida." Defs.' Resp. at 4, n. 2. Defendants contend the Exclusions are ambiguous, and "[u]nder Florida law, the remedy for an ambiguous provision is to resolve ambiguity 'against the insurer and in favor of coverage.'" *Interline Brands, Inc. v. Chartis Specialty Ins. Co.*, 749 F.3d 962, 966 (11th Cir.2014).

A district court exercising diversity jurisdiction generally applies the law of the forum state, including choice of law rules. *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Grupo Televisa, S.A. v. Telemundo Communs. Group, Inc.*, 485 F.3d 1233, 1240 (11th Cir.2007). Florida's choice of law rules therefore apply in this case.

"[W]here the laws of [ ] two jurisdictions would produce the same result on the particular issue presented, there is a 'false conflict,' and the Court should avoid the choice-of-law question." *Levy v. Brown & Williamson Tobacco Corp.*, Case No. 96–2280–CIV, 1998 WL 35184005, *3 (M.D.Fla. April 9, 1998) (citing *Williams v. Stone*, 109 F.3d 890, 893 (3d Cir.1997));

see *Tune v. Philip Morris Inc.*, 766 So.2d 350, 352 (Fla.Dist.Ct.App.2000) (deciding whether a "false conflict" exists as a threshold issue, and noting that a choice of law analysis is not required where a "false conflict" exists).

■ Here, the Parties agree that Florida's insurance coverage interpretation rules and those of New York differ in no outcome-determinative manner on the issues presented. Plaintiff argues no choice of law analysis is necessary, *see* Pl.'s Mot. at 3, and Defendants state that New York's insurance coverage interpretation rules do not "differ in any material respect from those of Florida." Defs.' Resp. at 4, n. 2. The Court agrees. As discussed further below, because the result is the same under both Florida law and New York law, there is a "false conflict" regarding the interpretation of policy coverage and exclusions in this case. The Court therefore foregoes a choice of law determination. *See Levy*, 1998 WL 35184005, *3.[5]

### B. Scope of the TCPA Exclusion

■ The Court next addresses whether the TCPA Exclusion absolves Plaintiff of a duty to defend and indemnify Med Waste for the Underlying Lawsuit. In other words, based only the Policy, is Plaintiff liable for the $10,000,000 judgment, or is Med Waste?

Plaintiff argues the TCPA Exclusion unambiguously excludes coverage for both the TCPA claims and conversion claims in the Underlying Lawsuit, and thus Plaintiff owes no duty to defend or indemnify Med Waste for the same. Pl.'s Mot. at 5. Plaintiff argues the TCPA Exclusion excludes coverage for the conversion claims because they "arose out of" the same fax advertisements that violated the TCPA. *Id.* at 7–8.

Defendants contend the TCPA Exclusion does not preclude coverage, arguing: (1) the TCPA Exclusion is ambiguous and therefore void, Defs.' Resp. at 10; (2) the TCPA Exclusion applies to damages "arising out of" violations of the TCPA, thus coverage for the common law conversion claims is not excluded, *id.* at 7–10; (3) Plaintiff cannot show that it obtained regulatory form approval authorizing it to include the Exclusions in the Policy, thus the Exclusions are void, *id.* at 6; and (4) even if Plaintiff is exempt from the regulatory requirement that it obtain form approval, Plaintiff failed to provide the stamp disclaimer that it is an excess lines insurer, thus the Exclusions are void. *Id.* at 6.[6]

■ The interpretation of an insurance agreement is a question of law. *VAM Check Cashing Corp. v. Federal Ins. Co.*, 699 F.3d 727, 729 (2d Cir.2012); *see Maryland Cas. Co.*, 771 F.Supp.2d at 1331–32. Unambiguous provisions in insurance contracts are construed according to their plain meaning. *Lavanant v. General Acc. Ins. Co. of Am.*, 79 N.Y.2d 623, 584 N.Y.S.2d 744, 595 N.E.2d 819, 822 (1992); *Garcia v. Federal Ins. Co.*, 969 So.2d 288, 291 (Fla.2007). Thus, any coverage determination "begins with a review of the plain language of the insurance policy as bargained for by the parties." *Koikos v.*

---

**5.** Were such a determination necessary, New York law would apply. Florida's *lex loci contractus* "rule, as applied to insurance contracts, provides that the law of the jurisdiction where the contract was executed governs the rights and liabilities of the parties in determining an issue of insurance coverage." *State Farm Mut. Auto. Ins. Co. v. Roach*, 945 So.2d 1160, 1163 (Fla.2006). Because the Policy was executed in New York, Am. Compl. (ECF No. 10) ¶ 14, New York law would apply. *See Roach*, 945 So.2d at 1163.

**6.** Defendants advance several other arguments throughout their Response and their Reply in Support of their Motion; however, they do not warrant analysis.

*Travelers Ins. Co.,* 849 So.2d 263, 266 (Fla. 2003); *see Travelers Indem. Co. v. Commerce & Indus. Ins. Co.,* 36 A.D.3d 1121, 828 N.Y.S.2d 658 (N.Y.App.Div.2007). Where a policy provision or exclusion is "clear and unambiguous" it is enforced according to its terms. *Garcia,* 969 So.2d at 291; *GEICO v. Kligler,* 42 N.Y.2d 863, 397 N.Y.S.2d 777, 366 N.E.2d 865, 866 (1977); *see VAM Check Cashing Corp.,* 699 F.3d at 729. Ambiguous provisions and exclusions are interpreted against the insurer and in favor of the insured. *Id.; Garcia,* 969 So.2d at 291. However, "[a] provision is not ambiguous merely because it requires analysis to interpret it." *Interline Brands,* 749 F.3d at 965 (internal quotation marks omitted). Likewise, "provisions in a contract are not ambiguous merely because the parties [attempt to] interpret them differently...." *Mount Vernon Fire Ins. Co. v. Creative Hous. Ltd.,* 88 N.Y.2d 347, 645 N.Y.S.2d 433, 668 N.E.2d 404, 406 (1996).

■ Here, the relevant coverage provisions in the Policy are Coverage A (Bodily Injury and Property Damage Liability) and Coverage B (Personal and Advertising Injury Liability). *See* Policy at 5, 9. Plaintiff's duty to defend and indemnify Med Waste for the fax advertisements is implicated, initially, by Coverage A and Coverage B. Coverage A provides in relevant part:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of ... "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.

*Id.* at 5. Coverage A is implicated by the Underlying Lawsuit because the fax advertisements were alleged to have converted the fax machines, paper, and ink toner of those who received the faxes. Coverage B provides in relevant part:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.

*Id.* at 9. Coverage B is implicated by the Underlying Lawsuit because the TCPA statutory violations and the conversion claims can only be fairly characterized as claims for advertising injury.

Coverage A and Coverage B also include a second paragraph, titled "2. Exclusions." *Id.* at 6, 10. The TCPA Exclusion explicitly adds to "Paragraph 2., Exclusions of Section I—Coverage A—Bodily Injury and Property Damage Liability" the following text:

> This insurance does not apply to:
>
> **DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES**
>
> "Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:
>
> > a. The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law....

*Id.* at 44. Likewise, the TCPA Exclusion explicitly adds to "Paragraph 2., Exclusions of Section I—Coverage B—Personal and Advertising Injury Liability" the following:

> This insurance does not apply to:
>
> **DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES**
>
> "Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

a. The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law....

*Id.*

Here, the TCPA Exclusion clearly and unambiguously applies to absolve Plaintiff of a duty to indemnify Med Waste for damage or injury "arising directly or indirectly out of any action or omission that violates or is alleged to violate" the TCPA. *Id.* The Court therefore finds that the TCPA Exclusion squarely precludes coverage and the correlated duty to indemnify for the TCPA claims in the Underlying Lawsuit. There is nothing ambiguous about the TCPA Exclusion. *See id.; see also Interline Brands*, 749 F.3d at 966 (holding no coverage for TCPA claims under similar policy exclusion where "violations of the TCPA" were not explicitly excluded by name, but rather were excluded because the exclusion applied to violations of "any statute ... that ... addresses ... the sending, transmitting or communicating of any material or information....").

■ In addition, the Court also finds that the scope of the TCPA Exclusion extends to the conversion claims in the Underlying Lawsuit. As stated previously, the conversion claims were premised on the theory that the TCPA-violating fax advertisements unlawfully converted the fax machines, paper, and ink toner of those who received the faxes. Thus, the TCPA claims and the conversion claims were premised on the same underlying conduct, namely the transmission of unsolicited fax advertisements in violation of the TCPA. The Exclusion applies to all claims "arising directly or indirectly out of any action or omission that violates or is alleged to violate" the TCPA. Policy at 44. The phrase "arising out of" is construed broadly and has been held to have the following meanings: "originating from, having its origin in, growing out of, flowing from, incident to, or having a connection with." *Maryland Cas. Co. v. Smartcop, Inc.*, Case No. 4:11–cv–10100–KMM, 2012 WL 4344571, *3 (S.D.Fla. Sept. 21, 2012) (Moore, J.); *see also Mount Vernon Fire Ins. Co.*, 645 N.Y.S.2d 433, 668 N.E.2d at 406 (equating "arising out of" and "based on" for purposes of insurance policy interpretation). Thus, the conversion claims, and any liability incurred as a result, plainly arose out of the TCPA-violating fax advertisements in this case. *See* Policy at 44. As such, the conversion claims are excluded from coverage by the TCPA Exclusion, and Plaintiff therefore owes no duty to indemnify Med Waste for them.

Furthermore, the Policy states that "[w]here there is no coverage under this policy, there is no duty to defend." *Id.* at 25; *see also Mt. Hawley Ins. Co. v. Dania Dist. Centre*, 763 F.Supp.2d 1359, 1366 (S.D.Fla.2011) *aff'd*, 513 Fed.Appx. 890 (11th Cir.2013) (holding that where claims are cast wholly within policy exclusion, there is no duty to defend). Having found that both the TCPA claims and conversion claims are excluded from coverage, and that Plaintiff owes no duty to indemnify Med Waste for liability under those claims, the Court also finds that Plaintiff owes no duty to defend Med Waste for the claims in the Underlying Lawsuit. Ultimately, because the TCPA claims and conversion claims were the only claims plead in the Underlying Lawsuit, Plaintiff owes no duty whatsoever to defend or indemnify Med Waste in the Underlying Lawsuit. This conclusion is the same under both New York and Florida law.

In light of the foregoing findings, the Court will address Defendants' four main arguments in turn. First, Defendants argue the TCPA Exclusion is void because it is ambiguous. Defs.' Resp. at 10. This

argument also fails, for the reasons stated above. Despite Defendants' attempt to characterize the TCPA Exclusion as ambiguous, there is nothing ambiguous about it. The argument is an attempt by Med Waste to avoid the $10,000,000 judgment against it, and an attempt by A Aventura to obtain payment in satisfaction of the judgment. However, "provisions in a contract are not ambiguous merely because the parties [attempt to] interpret them differently...." *Mount Vernon Fire Ins. Co.,* 645 N.Y.S.2d 433, 668 N.E.2d at 406.

Second, Defendants advance a number of arguments in support of the proposition that the conversion claims are not excluded by the TCPA Exclusion. Defs.' Resp. at 7–10. Defendants argue that the conversion claims do not arise out of the violation of the TCPA because "[t]he only damages that arise out of the TCPA are the damages provided for by the statute." *Id.* at 7. Thus, the argument goes, because common law claims for conversion are distinct from statutory claims for violations of the TCPA, they cannot be excluded from coverage by the TCPA Exclusion. Defendants also draw a distinction between the common law conversion claims, which require a showing of damages in order to recover, and the statutory TCPA claims, which do not require a showing for damages but only require showing that a fax advertisement was sent without prior express consent. *Id.* at 8. Lastly, Defendants argue the conversion claims are not excluded by the TCPA Exclusion because its scope does not unambiguously and explicitly extend to conversion claims. *Id.* at 9–10. Each of these arguments fails based on the foregoing findings that the TCPA Exclusion is not ambiguous and extends in scope to the conversion claims in this case.

Third, Defendants argue the Exclusions are void because Plaintiff failed to obtain the regulatory form approval required to include the TCPA Exclusion in the Policy. Defs.' Resp. at 6. However, this argument fails. James River is a New York excess lines insurer, and excess lines insurers are not subject to New York's regulations that require the filing and approval of insurance policy forms. Pl.'s Mot., Ex. D, Maher Aff. (ECF No. 64–4) ¶¶ 5, 8.

Fourth, Defendants argue that even if Plaintiff is not subject to New York's form approval requirements (which Plaintiff is not subject to), Plaintiff, as an excess lines insurer, must have provided Med Waste with the excess lines insurer stamp disclaimer. *Id.* at 6. Defendants allege that Plaintiff failed to provide the stamp disclaimer. *Id.* However, this allegation is refuted by the evidence. The Excess Lines Association of New York ("ELANY") is an organization which exists to facilitate compliance with New York insurance law. Maher Aff. ¶ 2. To obtain authorization to issue an excess lines policy, excess lines brokers must submit the policy, with an accompanying affidavit, to ELANY for approval. *Id.* ¶ 7. After ELANY verifies that the excess lines policy meets New York's excess lines law, ELANY stamps and returns the policy to the broker for delivery to the insured. *Id.* In this case, ELANY's records indicate that on January 15, 2010, ELANY stamped and returned the Policy to Med Waste's broker. *Id.* ¶ 9; Rosen Aff. (ECF No. 71–1) ¶¶ 2–3, 5. The Policy also bears the ELANY stamp disclaimer. Rosen Aff., Ex. 1 (ECF No. 71–1) at 4. Furthermore, under New York law, a broker is the insured's agent. *Evvtex Co. v. Hartley Cooper Assoc.,* 911 F.Supp. 732, 738 (S.D.N.Y.1996). Thus, even if Med Waste never received a stamped copy of the Policy (an allegation refuted by the evidence), delivery of the stamped copy to Med Waste's excess lines broker is sufficient.

For the foregoing reasons, the Court concludes that Plaintiff owes no duty to defend or indemnify Med Waste for the Underlying Lawsuit. Even viewing the facts and record evidence in the light most favorable to Defendants, it is clear that there is no genuine issue as to any material fact bearing on the question of Plaintiff's duty to defend or indemnify Med Waste for the Underlying Lawsuit. The interpretation of the Policy is a question of law, *VAM Check Cashing Corp.*, 699 F.3d at 729; *Fla. Atl. Orthopedics, LLC*, 771 F.Supp.2d at 1331–32, and the TCPA Exclusion clearly and unambiguously precludes coverage for the TCPA claims and conversion claims in the Underlying Lawsuit. Plaintiff is therefore entitled to declaratory judgment as a matter of law. *Twiss*, 25 F.3d at 1554; Fed.R.Civ.P. 56(a); *see Fla. Atl. Orthopedics, LLC*, 771 F.Supp.2d at 1331–32.

### C. Scope of the Conversion Exclusion

■ In addition, even if the conversion claims were not excluded from coverage by the TCPA Exclusion, they would be excluded under the Conversion Exclusion. The Conversion Exclusion is incorporated into "ALL COVERAGE PARTS" and provides that the Policy "does not apply to any claim arising out of the . . . conversion or misappropriation of others' . . . property." Policy at 49. The Conversion Exclusion is unambiguous. Applying the clear and unambiguous language according to the plain meaning of the exclusion's terms, *Garcia*, 969 So.2d at 291; *GEICO v. Kligler*, 397 N.Y.S.2d 777, 366 N.E.2d at 866; *see VAM Check Cashing Corp.*, 699 F.3d at 729, the Court finds that any liability incurred as a result of conversion of proper-

ty by the fax advertisements is excluded from coverage. Defendants advance arguments to the contrary, *see* Defs.' Resp. at 16, but the arguments do not warrant analysis.

### D. The Exclusions are Dispositive

The Court notes that the Parties advance several other arguments as to whether liability for the TCPA claims and conversion claims in the Underlying Lawsuit is covered or excluded by the Policy. However, because the Court's finding that Plaintiff owes no duty to defend or indemnify Med Waste in the Underlying Lawsuit is dispositive, the Court need not reach a determination on the several other arguments raised. Likewise, because summary judgment is appropriate on Plaintiff's Counts I–III and VI,[7] which together seek a declaration that Plaintiff owes no duty to defend or indemnify Med Waste in the Underlying Lawsuit, each of Plaintiff's other counts are denied as moot.

## IV. CONCLUSION

For the foregoing reasons, it is

Hereby ORDERED AND ADJUDGED that Plaintiff's Motion for Summary Judgment (ECF No. 66) is GRANTED. Declaratory Judgment as to Counts I–III and Count VI of the Amended Complaint (ECF No. 10) is GRANTED. It is therefore DECLARED that Plaintiff owes no duty to defend or indemnify Med Waste in the Underlying Lawsuit. All other Counts and reliefs requested are DENIED AS MOOT. Should Plaintiff contend it is entitled to fees or costs, Plaintiff may move the Court for fees and costs and shall

---

**7.** Count I seeks a declaration of "No Coverage Under the TCPA Exclusion." Am. Compl. at 11. Count II seeks a declaration of "No Coverage Under the Conversion Exclusion." *Id.* Count III seeks a declaration of "No Cov- erage Under the Insuring Agreements." *Id.* at 12. Count VI seeks a declaration of "No Coverage Under the Duty to Defend Exclusion." *Id.* at 13.

support its motion with all relevant arguments and, where applicable, exhibits.

It is FURTHER ORDERED AND ADJUDGED that Defendants' Motion for Summary Judgment (ECF No. 81) is DENIED.

Accordingly, the Clerk of Court is instructed to CLOSE this case.

All other pending motions are DENIED AS MOOT.